[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUE
Whether the defendant Glastonbury Zoning Board of Appeals (hereinafter Board) acted illegally, arbitrarily or in abuse of its discretion in granting defendant Stewart Beckett's application for a variance?
HOLDING
Plaintiff Robert Scheu's appeal is sustained.
FACTS
On February 10, 1986 the defendant Board granted a use variance permitting defendant Beckett to operate a veterinary practice and hospital at 1265 Main Street, Glastonbury; this property is zoned Residence Zone AA. (Return of Record [hereinafter ROR] #3). On July 29, 1991 Glastonbury Zoning Enforcement Officer Bernard Dion informed defendant Beckett that Dion was aware that defendant Beckett was boarding dogs on his premises, and that such conduct was not permitted pursuant to the 1986 variance. (ROR #4, #6).
On August 13, 1991 defendant Beckett filed an application to the defendant Board appealing from Dion's adverse determination, and, alternatively, appealing for a variance from the restrictions imposed upon uses in Residence Zone AA. (ROR #6).
On September 9, 1991 the defendant Board discussed defendant Beckett's application at a public meeting. (ROR #12, #13, #14). On September 10, 1991 the defendant Board affirmed Zoning Enforcement Officer Dion's determination, and granted a variance allowing defendant Beckett to conduct overnight boarding of dogs for non-medical reasons. (ROR #9). The defendant Board stated: "This variance is granted on the basis that the use is a minor extension of the previously granted CT Page 4280 variance to the veterinary practice. . . ." (ROR #9).
On October 9, 1991 the plaintiff filed a single-count complaint against defendant Beckett, the defendant Board, and Edward Friedberg, Glastonbury Town Clerk. Plaintiff alleges that the defendant Board acted illegally, arbitrarily, and in abuse of its discretion in that the Board approved the variance, even though defendant Beckett failed to demonstrate hardship; in that the variance is inconsistent with the Town Comprehensive Zoning Plan; in that the defendant board made its decision based upon defendant Beckett's representations at the public hearing, and these representations were contradicted by defendant Beckett's statements in a letter addressed to Dion; and in that the defendant Board failed to submit defendant Beckett's variance application to the town Plan and Zoning Commission, as required by 13, 2(b) of the Town Building Zone Regulations. Plaintiff alleges that he is aggrieved by the defendant Board's decision in that he owns property located within 100 feet from defendant Beckett's property.
On December 13, 1991 defendant Friedberg and the defendant Board filed an answer. On February 26, 1992 defendant Beckett filed an answer. Plaintiff filed a brief on February 18, 1992 and a supplemental brief on March 1, 1993. Defendant Beckett filed a brief on June 25, 1992 and a supplemental brief on February 10, 1993. The defendant Board filed a brief on July 1, 1992.
The court held a hearing on this matter on February 10, 1993.
JURISDICTION
Aggrievement
Defendants argue that plaintiff is not aggrieved, because the variance at issue is a minor amendment to the 1986 variance, and the plaintiff did not own his property in 1986. Plaintiff argues that he is aggrieved, because he falls within the statutory definition of aggrievement.
An "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes 8-8(a)(1). "Abutting landowners or landowners within CT Page 4281 a radius of one hundred feet of the land involved in any decision of the zoning board are considered automatically aggrieved and have standing to appeal a decision of a zoning board without having to prove aggrievement." Smith v. Planning Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987).
In Aitken v. Zoning Board of Appeals, 18 Conn. App. 195,557, A.2d 1265 (1989), the individual defendant had received a variance in 1977, permitting this defendant to subdivide his property into several lots. Id., 197. In 1987, this defendant received an additional variance, permitting this defendant to resubdivide his property. Id., 196. the plaintiff, an abutting landowner, appealed the granting of the 1987 variance, and the defendants argued that the plaintiff was not aggrieved because she did not demonstrate a direct personal or legal interest in the outcome of the litigation, other than her status as an abutting landowner. Id., 197-98. In analyzing the aggrievement issue, the court reviewed the plaintiff's status as an abutting landowner at the time of the granting of the 1987 variance, without determining whether the plaintiff owned the property at the time of the granting of the 1977 variance. Id.
Plaintiff has produced certified copies of deeds for two properties; the properties are referred to in the deeds as lots 19 and 21 on a map entitled "Subdivision Plan Red Hill Subdivision. . . ." (Plaintiff's Exhibits #1, 2). The deeds identify plaintiff as an owner of the properties. (Plaintiff's Exhibits #1, 2). Plaintiff testified that his properties abut defendant Beckett's property.
Pursuant to General Statutes 8-8(a)(1) and the holding of Smith, this court finds that the plaintiff is aggrieved. The defendants' aggrievement argument is without merit because it would require the court to use an analysis other than the analysis used by the appellate court in the factually analogous Aitken case.
Timeliness
A party taking an appeal must commence the action by making service of process within fifteen days from the date when notice of the Board's decision was published in a newspaper. General Statutes 8-8(b). Notice of the decision was published on September 12, 1991. (ROR #12). Service of process was made upon the defendant Board, defendant Beckett, and defendant CT Page 4282 Friedberg on September 25, 1991. (Sheriff's Return). Accordingly, the plaintiff's appeal is timely.
DISCUSSION
1. Scope of Review
In reviewing the decision of a zoning board of appeals, the trial court must review "the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . ." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988). "[A] board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Connecticut Sand Stone Corporation v. Zoning Board of Appeals, 150 Conn. 439, 442, 190 A.2d 594
(1963). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Adolphson v. Zoning Board of Appeals, supra, 707.
A zoning agency's action must be sustained if any one of the reasons stated is sufficient to support the action. Primerica v. Planning Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989); Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 576, 538 A.2d 1039 (1988). "If the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732,546 A.2d 919 (1988), aff'd 211 Conn. 76, 556 A.2d 1024 (1989).
2. Hardship
The plaintiff argues that the defendant Board may only grant a variance where a hardship is shown by the applicant. The plaintiff argues that the record does not reveal the existence of any hardship.
The defendants argue that hardship was shown in the 1986 variance application; since the 1991 variance is an extension of the 1986 variance, no new showing of hardship is required. The defendants also argue that the inability to provide dog boarding services would impose a hardship on defendant Beckett by limiting his services; the defendants argue that defendant Beckett's clients would also face a hardship, since they would CT Page 4283 lose defendant Beckett's board services.
 The zoning board of appeals shall have the following powers and duties: . . . [T]o determine and vary the application of the zoning. . . regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such. . . regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . .
General Statutes 8-6.
 The Zoning Board of Appeals shall have the following powers and duties. . . . Variances. To determine and vary the application of these Regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the zone in which it is situated, a literal enforcement of these Regulations or amendments thereto would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . .
Town of Glastonbury Building Zone Regulations 13.2b.
 For a variance to be granted under General Statutes 8-6(3), two conditions CT Page 4284 must be fulfilled: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.
Kelly v. Zoning Board of Appeals, 21 Conn. App. 594, 597-98,575 A.2d 249 (1990). "Proof of hardship is a condition precedent to granting a variance." Kelly v. Zoning Board of Appeals, supra, 598; see also Ward v. Zoning Board of Appeals, 153 Conn. 141,143, 215 A.2d 104 (1965).
In its decision, the defendant Board did not address the hardship issue. Pursuant to the holding of Stankiewicz v. Zoning Board of Appeals, supra, this court must search the record to determine whether hardship exists.
A search of the record shows two references to hardship: First, defendant Beckett's attorney, Attorney Alter, referred to hardship during the public hearing:
 In terms of hardship, because we do have to establish a hardship in order to be entitled to even an amendment to a variance, in my opinion, the preventing of Dr. Beckett from providing a limited boarding of dogs overnight not there for medical treatment, imposes the hardship, a significant hardship, on his clients, who have made a demand on him to provide this service and who have great feelings for their animals.
(ROR #14, p. 4).
 [T]he hardship which must exist in order for a zoning board of appeals to grant a variance is a hardship on an individual property owner. The board is not authorized to grant a variance in order to relieve against a hardship suffered by the town as a whole. CT Page 4285
Finch v. Montanari, 143 Conn. 542, 546, 124 A.2d 214 (1956).
The supreme court in Finch decided that the zoning board of appeals acted improperly when it granted a variance to permit the location of a veterinary hospital in a business zone, giving as a reason that it was a hardship to the town as a whole to be without a veterinary hospital. Id.
 The fact that an important public need exists for a particular use cannot be the sole basis for a variance because the satisfaction of that need is a question of legislative policy. Paul v. Board of Zoning Appeals, 142 Conn. 40, 44. The power to determine the needs of the community with reference to uses of property, and to legislate in such a way as to satisfy those needs, is vested exclusively in the zoning commission, and that power may not be delegated to the zoning board of appeals nor may it be exercised by the board on its own initiative. WATR v. Zoning Board of Appeals, 158 Conn. 196, 199.
Smith v. Bristol Zoning Board of Appeals, 6 CSCR 780, 781 (July 23, 1991, Hammer, J.).
Pursuant to the authority cited above, it is found that the inconvenience imposed upon defendant Beckett's clients by defendant Beckett's inability to provide non-medical dog boarding services does not constitute hardship. Therefore, the inconvenience to defendant Beckett's clients is not a proper basis for granting the variance.
The record contains a second reference related to hardship. At the public hearing, defendant Beckett stated:
 I spent several hundreds of thousands of dollars on this project. Obviously, you've got to. . . pay the town taxes. . . as well as the mortgage. So, I need to try and keep [the kennel area] as full as possible. . . . CT Page 4286
(ROR #14, p. 21).
Proof of potential economic advantage to the property owner which would be lost if the potential use is not permitted "is not proof of legal hardship which justifies the granting of a variance." Laurel Beach Assn. v. Zoning Board of Appeals,166 Conn. 385, 387, 349 A.2d 834 (1974).
 Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect.
(Citations omitted.) Grillo v. Zoning Board of Appeals,206 Conn. 362, 369, 537 A.2d 1030 (1988).
In the present case, defendant Beckett does not claim that the inability to provide non-medical dog boarding services practically destroys the value of his property; he testifies only that non-medical dog boarding would provide needed income. Pursuant to the holdings of Laurel Beach Assn. and Grillo, it is submitted that defendant Beckett's evidence of lost potential income does not constitute a showing of hardship. Therefore, defendant Beckett's loss of potential income is not a proper basis for granting the variance.
Defendant Beckett argues that hardship was shown in the 1986 variance application, and that since the 1991 variance is an extension of the 1986 variance, the earlier showing of hardship obviates the need for any further showing of hardship. Defendant Beckett argues that his failure to show hardship in CT Page 4287 the present variance application procedure is immaterial.
In Aitken v. Zoning Board of Appeals, supra, the trial court held that the defendant board's prior grant of a variance to the same landowner was determinative of the hardship issue; therefore, the trial court upheld the second variance grant. Id., 197. In reversing the trial court, the appellate court held that a board's reliance upon an earlier related variance is insufficient to establish hardship. Id., 205.
Accordingly, a showing of hardship is required. As submitted above, the record reveals no basis from which the defendant Board could have made a finding of hardship. Therefore, it is found that the defendant Board's decision is not based upon a valid reason, and the plaintiff's appeal should be sustained.
3. Failure to Consider All Relevant Evidence
The plaintiff argues that 13.2(b) of the Glastonbury Building Zone Regulations requires the defendant board to submit applications for variances to the Plan and Zoning Commission for review and comment. Plaintiff argues that the defendant Board's failure to follow this regulation resulted in an incomplete and defective record. Plaintiff also argues that the counsel for defendant Beckett and the defendant Board have stated in their motion to amend the record that a letter from defendant Beckett to Zoning Enforcement Officer Dion was not transmitted to the defendant Board when it considered the variance application. Hence, plaintiff argues that the record was incomplete.
Defendants argue that the court cannot speculate upon what impact the letter would have had upon the defendant Board's deliberations. Defendants argue that as long as the defendant Board has reasonably and fairly exercised its judgment, the court may not sustain the appeal on this ground.
 a. Failure to Submit the Variance Application to the Plan and Zoning Commission
In relevant part, Glastonbury Building Zone Regulations 13.2(b) states:
 No application for variance from the use provisions of these Regulations (as CT Page 4288 distinguished from the area, frontage, yard, coverage, height, etc. provisions hereof) shall be voted upon until a report with recommendations thereon has been received from the Town Plan and Zoning Commission, or if no such report has been received, until twenty (20) days after a copy of such application has been sent to the Town Plan and Zoning Commission for its recommendations.
In Arrieu v. Litchfield, 17 Conn. App. 320, 552 A.2d 445
(1989), the plaintiffs sought to have a variance declared null and void because the zoning board of appeals failed to follow a zoning regulation which required the board to transmit variance applications to the planning and zoning commission. Id., 322-23. In relevant part, the regulation stated: "Every application for variance from the Use Regulations and Special Regulations shall be: 1. Immediately transmitted to the [Planning and Zoning] Commission and, on or before the public hearing held by the Board on such application for variance, the Commission shall make a report with recommendations thereon such report to be a part of the record of the case." Id., 323. The court held that this requirement was directory, not mandatory; therefore, the court concluded that the plaintiffs' claim that the board's failure to follow the regulation required that the variance be declared null and void was meritless. Id., 324.
13.2(b) and the regulation analyzed in Arrieu are similar. Neither regulation goes to the "essence of the thing to be accomplished." Arrieu v. Litchfield, supra, 324. Pursuant to the holding of Arrieu, this court finds 13.2(b) to be directory, not mandatory; hence, this court does not need to sustain the plaintiff's appeal on this ground.
 b. Failure to Submit Defendant Beckett's Letter to the Board
"The officer from whom the appeal has been taken shall forthwith transmit to [the zoning board of appeals] all the papers constituting the record upon which the action appealed from was taken." General Statutes 8-7.
No Connecticut case law has been found regarding the effect of a zoning enforcement officer's failure to transmit the entire CT Page 4289 record to the zoning board of appeals.
The letter at issue contained defendant Beckett's representation that he did not board animals for non-medical reasons. (ROR #5). The defendant Board affirmed Zoning Enforcement Officer Dion's determination that defendant Beckett was boarding dogs for non-medical reasons, and that such a use was not permitted by the 1986 variance. (ROR #9).
The absence of evidence contrary to this finding would be to defendant Beckett's disadvantage and to the plaintiff's advantage. Therefore, the absence of this evidence does not further the plaintiff's appeal. Accordingly, this court does not need to sustain the plaintiff's appeal on this ground.
CONCLUSION
The record reveals no basis from which the defendant Board could have made a finding of hardship. Accordingly, the plaintiff's appeal is sustained.
Edward J. Mullarkey, J.